# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between California Sportfishing Protection Alliance ("CSPA" or "Plaintiff"") and Cirexx International, Inc. ("Defendant"), (CSPA and Defendant are also individually referred to herein as a "SETTLING PARTY" and the parties collectively are referred to as the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Francisco Bay and other California waters;

**WHEREAS**, Defendant is a California corporation in good standing which owns and operates an industrial facility at 791 Nuttman Street, Santa Clara, California 95054 in Santa Clara County ("Facility"), with the Waste Discharge Identification ("WDID") number of WDID 2 43I006529;

**WHEREAS**, the Facility falls within Standard Industrial Classification ("SIC") code 3672, printed circuit board manufacturing;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are currently regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board ("State Board")], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ, and by Water Quality Order Nos. 2015-0122-DWQ and 2018-0028-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, the Permit includes the following requirements for all covered permittees, including Defendant: (1) develop and implement a storm water pollution prevention plan ("SWPPP"); (2) control pollutant discharges using, where applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the

1

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

SWPPP; and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on April 15, 2022, CSPA sent to: (i) Defendant, (ii) the Administrator of the United States Environmental Protection Agency ("USEPA"), (iii) the Administrator for Region 9 of the USEPA ("Region 9 Administrator"), (iv) the United States Attorney General, (v) the Executive Director of the California State Water Resources Control Board, and the Executive Officer of the San Francisco Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 ("60-Day Notice Letter"), alleging violations of the Clean Water Act and the Permit at the Facility;

**WHEREAS**, on September 27, 2022, CSPA filed a complaint against Defendant in the United States District Court for the Northern District of California ("U.S. District Court"), entitled *California Sportfishing Protection Alliance v. Cirexx International, Inc.* (Case No. 5:22-cv-05495-NS), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint") based on CSPA's 60-Day Notice Letter;

**WHEREAS**, CSPA alleges in its 60-Day Notice Letter and the Complaint that, among other things, Defendant has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

**WHEREAS**, Defendant denies all allegations set forth in the 60-Day Notice Letter and in the Complaint relating to the Facility and makes no admissions of any facts, allegations, laws, legal conclusions, liabilities, damages, or claims;

**WHEREAS**, the SETTLING PARTIES, through their authorized representatives and without either (i) adjudication of CSPA's claims or (ii) admission by Defendant of any alleged violation or other wrongdoing, seek to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement to avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and Defendant have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and Defendant hereby agree as follows:

2

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.*–
Case No. 5:22-cv-05495-NS

## JURISDICTION AND VENUE

1. The SETTLING PARTIES hereby agree that:

    a. The District Court has jurisdiction over the subject matter of the claims asserted by CSPA in the Complaint pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 ("federal question"), 2201 (Declaratory Judgment Act), and

    b. Venue for CSPA's Complaint is proper in the United States District Court for the Northern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1) and the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365; and

    c. CSPA has standing to bring this action.

2. Defendant denies the factual allegations of CSPA's complaint but, for purposes of settlement, the SETTLING PARTIES waive all objections that they may have to the Court's ability to retain jurisdiction, over the SETTLING PARTIES and this AGREEMENT as specified in Paragraph 4.

## EFFECTIVE DATE

3. The term "Effective Date," as used in this AGREEMENT, shall mean the day on which the Court enters an order granting the SETTLING PARTIES' stipulation to dismiss CSPA's claims with prejudice ("Order") pursuant to Paragraph 4.

## COMMITMENTS OF CSPA

4. **Stipulation to Dismiss With Prejudice and [Proposed] Order**. Within ten (10) court days of the Agency Approval Date, as defined in Paragraph 18 below, CSPA shall file with the District Court a Stipulation to Dismiss With Prejudice and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing with prejudice all claims in its Complaint. The Stipulation to Dismiss With Prejudice and [Proposed] Order shall state that the District Court will maintain jurisdiction over the SETTLING PARTIES for the sole purpose of resolving disputes between the SETTLING PARTIES with respect to enforcement of this AGREEMENT through the Termination Date, as defined in Paragraph 24 below, or through the conclusion of

3

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

any proceeding to enforce this AGREEMENT, or until the completion of any payment or affirmative duty required by this AGREEMENT.

## COMMITMENTS OF DEFENDANT

5. **Compliance with General Permit**. Defendant agrees to operate the Facility in compliance with the applicable requirements of the Permit and the Clean Water Act.

6. **BMPs**. Defendant shall maintain (a) storm water BMPs at the Facility implemented before CSPA's notice letter of April 15, 2022, and (b) all BMPs installed or implemented since April 15, 2022, which are as follows:

    a. Cleaned and re-painted area on NW side of Building 1, with awning-covered waste treatment area and generator/scrubber area, completed June 8, 2022;

    b. Installed on 9 downspouts new in-line downspout filters with particulate and metal filter media (BioClean Model BC-DF6 with Bosorb media), to augment existing filter-drum on 1 downspout, resulting in 10 controlled downspouts, completed June 15, 2022;

    c. Contracted for sweeping driveways and parking areas annually, and including bi-monthly sweeping during wet seasons, beginning June 18, 2022;

    d. Cleaned and re-painted sensitive roof equipment (including all piping on roofs), completed July 15, 2022;

    e. Cleaned and painted 3 storage containers, fencing on NW side of Building 2, and some metal posts in plating supply area; completed July 15, 2022;

    f. Cleaned and painted compressor area under awning on SE area of Building 2, completed July 24, 2022;

    g. Constructed permanent rain-proof cover adjacent to storage building on NE side of property, and moved materials under cover, completed by August 31, 2022.

    h. Cleaned and re-painted, in addition to described locations, outside locations to rust or oxidization of aluminum material (as needed), completed by August 31, 2022;

    i. Implemented minimum and advanced BMPs as detailed in the Facility's SWPPP, including good housekeeping, preventative maintenance, spill and leak prevention and response, material handling and waste management, employee training, quality assurance, and record keeping, ongoing;

4

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.*–
Case No. 5:22-cv-05495-NS

      j.    Implemented an updated Monitoring Implementation Plan ("MIP") and Reporting Plan as detailed in the Facility SWPPP, ongoing as required.

7. Additional BMPs

      a.    Contract for and install raised berms at Sampling Points 2 and 3 which will direct surface waters to a single point suitable for sampling while discharging to the street.

      b.    Within twenty (20) business days of completing the additional BMPs described above in Paragraph 7a, Defendant shall confirm completion by notifying CSPA.

8. **Amendment of SWPPP.** Defendant shall provide an amended SWPPP to CSPA to incorporate the additional changes, improvements, and BMPs as a result of any Action Plans required under this AGREEMENT pursuant to Paragraphs 11 and 12. A copy of the amended SWPPP shall be provided to CSPA within thirty (30) business days of the Effective Date.

9. **Monitoring of Storm Water Discharges**. Defendant shall collect samples of storm water discharge from Discharge Locations designated in the SWPPP. Provided sufficient storm events occur, Defendant shall collect storm water samples from each Discharge Location from at least four (4) qualified storm events as required by the Permit (i.e., two Qualifying Storm Events ("QSEs") during the first half of the reporting year and two QSEs during the second half of the reporting year). [A QSE is a storm that occurs during normal business hours and produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area.] Any failure to collect samples as required by this AGREEMENT shall be documented and submitted to CSPA by email within five (5) days of the date a sample should have been collected but was not. All samples collected pursuant to this AGREEMENT shall be analyzed for the parameters listed in Table 1, and separately those required by the Permit not included in Table 1.

10. **Reduction of Pollutants in Discharges.** During the 2022-2023 years and for the remainder of the term of this AGREEMENT, if storm water samples demonstrate an exceedance of a numeric limit in Table 1 (as defined below in Paragraph 11) in a single Reporting Year, Defendant shall comply with the action plan requirement set forth below.

5

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

TABLE 1

| Analytes | Values | Source of Limit[1] |
|---|---|---|
| Total Suspended Solids | 100 mg/L | Numeric Action Limit |
| Nitrate+Nitrite Nitrogen | 0.68 mg/L | Numeric Action Limit |
| Zinc | 0.26 mg/L | Numeric Action Limit |
| Copper | 0.0332 mg/L | Numeric Action Limit |
| Iron | 1 mg/L | Numeric Action Limit |
| Aluminum | 0.75 mg/L | Numeric Action Limit |

**11. Action Plan for Table 1 Exceedances**.[2] If during either the 2022-2023 or 2023-2024 Reporting Years (1) the average of all storm water analytical results for individual pollutant(s) exceeds any of the applicable limits set forth in Table 1; or (2) any storm water sample contains a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit, Defendant shall prepare and submit to CSPA a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") for the Facility by June 1 of that Reporting Year.

    a.    Any Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Defendant shall notify CSPA in writing when an Action Plan has been implemented. CSPA shall have seven (7) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Paragraphs 25-27 below.

**12.**    **Monitoring Results**.  Results from the Defendant's sampling and analysis during the term of this AGREEMENT shall be uploaded to the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") in accordance with the requirements of

---

[1] Numeric Action Limits are from the General Permit.
[2] Action Plan requirements are retroactive to include the current 2022-2023 Reporting Year.

6

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

the Permit. Within ten (10) business days of uploading the results, Defendant shall provide notice to CSPA via e-mail that the results have been uploaded to SMARTS.

13. **Provision of Documents and Reports**. During the term of this AGREEMENT, Defendant shall provide CSPA with copies of all documents submitted to the Regional Board or the State Board concerning the Facility's storm water discharges, including, but not limited to, all documents and reports submitted in accordance with the Permit. If Defendant submits such documents to the Regional Board or State Board via SMARTS, Defendant may satisfy this requirement by providing notice to CSPA via e-mail that said results have been uploaded to SMARTS within ten (10) business days of uploading said results.  Within twenty-one (21) business days of receipt of a written request (via e-mail or regular mail) by CSPA, Defendant shall also provide CSPA a copy of all documents referenced in this AGREEMENT from the year prior to the request, including but not limited to logs, photographs, or analyses.

14. **Site Inspection.** CSPA may conduct one (1) site inspection ("Site Inspection"), the scope of which is limited to ensuring compliance with this AGREEMENT and the Permit, subject to reasonable conditions specified by Defendant (*e.g.*, if requested, CSPA and its agents executing an access agreement containing conditions, including but not limited to, insurance naming Defendant as an additional insured beneficiary, indemnification of Defendant, restriction of access to exterior locations at the Facility, restrictions based on safety and health considerations, and confidentiality of proprietary, confidential, private, classified and non-public information). CSPA shall schedule the Site Inspection to occur during a forecasted precipitation event at the Facility following Defendant's completion of the work described in Paragraph 7 but no later than  November 1, 2023; however, if no precipitation event is forecasted to occur before November 1, 2023 and is at a time when CSPA can perform the Site Inspection, CSPA can schedule the Site Inspection during a date without a forecasted precipitation event to ensure the Site Inspection is completed no later than November 1, 2023. CSPA's failure to conduct the Site Inspection prior to November 1, 2023, shall constitute a waiver of CSPA's right to conduct the Site Inspection. The Site Inspection shall occur during normal daylight business hours and CSPA shall provide Defendant with as much notice as possible, but at least three (3) calendar days' notice of the intended Site Inspection, except that Defendant will have the right to deny access if circumstances would make the Site Inspection unduly burdensome and pose significant interference with operations or the schedule of any SETTLING PARTY or their attorneys, or the

7

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

safety of individuals. CSPA will continue to follow the weather forecasts, and will confirm the Site Inspection at least twenty-four (24) hours prior to the start of the Site Inspection. Notice will be provided by electronic mail. During the Site Inspection, Defendant shall allow CSPA and its representatives access to the Facility's SWPPP, storm water monitoring records, and non-privileged reports and data related to storm water monitoring at the Facility. CSPA may collect a sample of storm water discharge from the Facility's designated discharge points referenced in its SWPPP, to the extent that such discharge points still exist and discharges are occurring and a representative sample can be obtained.  CSPA shall collect the samples and provide a split sample to Defendant.  Defendant's representative(s) may observe the split sample(s) being collected by CSPA's representative(s). CSPA may take photographs and/or video recordings during the Site Inspection of infrastructure relevant to assessing compliance with this AGREEMENT and the Permit, though the photos and video recording will not show Defendant logos, and/or specific landmarks of the Facility. CSPA shall provide Defendant with the photographs and video recordings within ten (10) business days after the Site Inspection. The SETTLING PARTIES acknowledge that information obtained during the Site Inspection may contain confidential business or trade secret information and, as such, the SETTLING PARTIES agree that all information obtained by CSPA from Defendant as a result of or in connection with a Site Inspection shall be maintained as confidential and shall not be disclosed to any third party, except that such information can be presented to the District Court to enforce compliance with this AGREEMENT. The Site Inspection will be limited to a visit of the areas exterior to the buildings at the Facility, and will not include access to the interior of the buildings at the Facility or observation into the buildings from the exterior. Defendant reserves the right to limit or further define physical site access as needed to accommodate site conditions, safety or operational concerns, or other issues.

**MITIGATION PAYMENT; REIMBURSEMENT OF FEES AND COSTS; COMPLIANCE MONITORING; STIPULATED PAYMENTS**

  **15.**  **Mitigation Payment/Environmental Project**. To fund environmental project activities that will protect, enhance, restore or reduce the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the San Francisco Bay, Defendant agrees to make payments totaling Ten Thousand Dollars ($10,000) to the Rose Foundation as follows: 1) $3333.00 within thirty (30) calendar days of the Court's entry of the Order dismissing the

8

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

action described in Paragraph 4 of this AGREEMENT; 2) $3333.00 made within thirty (30) days of the initial payment; and 3) $3334.00 made within sixty (60) days of the initial payment to the Rose Foundation. All payments shall be made payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607.

16.     **Reimbursement of Fees and Costs**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, Defendant shall pay CSPA the sum Thirty-Nine Thousand Dollars ($39,000.00). Payments shall be made by Defendant as follows: $13,000 within thirty (30) calendar days of the Court's entry of the Order dismissing the action described in Paragraph 4 of this AGREEMENT; 2) $13,000.00 made within thirty (30) days of the initial payment; and 3) $13,000 made within sixty (60) days of the initial payment to Aqua Terra Aeris Law Group. The payments shall be made via check and payable to: "Aqua Terra Aeris Law Group" and delivered by overnight delivery to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609. When complete these payments shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the District Court's entry of the Order.

17.     **Compliance Monitoring Funds**.  As reimbursement for CSPA's future fees and costs that will be incurred for CSPA to monitor Defendant's compliance with this AGREEMENT, Defendant shall pay CSPA the sum of Three Thousand Dollars ($3,000.00). Payment shall be made by Defendant within ninety (90) calendar days of the Court's entry of the Order dismissing the action described in Paragraph 4 of this AGREEMENT. The payment shall be made via check, made payable to: "Aqua Terra Aeris Law Group" and delivered by overnight delivery to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

## COMMITMENTS OF CSPA

18.     **Submission of Agreement to Federal Agencies**.  CSPA shall submit this AGREEMENT to the USEPA and the United States Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) business days after the SETTLING PARTIES fully execute this AGREEMENT, for review consistent with 40 C.F.R. §

9

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

135.5. The Agencies' review period expires forty-five (45) calendar days after receipt of the AGREEMENT by both Agencies. In the event that the Agencies comment negatively on the provisions of this AGREEMENT, the SETTLING PARTIES agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If the SETTLING PARTIES are unable to resolve any issue(s) raised by the Agencies in their comments, the SETTLING PARTIES agree to expeditiously seek a settlement conference with the District Court Judge or Magistrate Judge assigned to this matter to resolve the issue(s). If the SETTLING PARTIES cannot resolve the issue(s) through a settlement conference, this AGREEMENT shall be null and void. The date of (a) the Agencies' unconditioned approval of this AGREEMENT, (b) the expiration of the Agencies' review period, or (c) the SETTLING PARTIES' resolution of all issues raised by the Agencies, whichever is earliest, shall be defined as the "Agency Approval Date."

## NO ADMISSION OR FINDING

19. The SETTLING PARTIES enter into this AGREEMENT for the purpose of avoiding prolonged and costly litigation. This AGREEMENT, payment pursuant to the AGREEMENT, or compliance with this AGREEMENT shall not constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. However, this AGREEMENT or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT. Defendant maintains and reserves all defenses Defendant may have to any alleged violation(s) at any time. Nothing herein shall constitute a waiver or compromise of any defense or right by Defendant.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

20. In consideration of the above, and except as otherwise provided by this AGREEMENT, as of the Effective Date of this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors, members, shareholders, and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions, or causes of action, either at law or in equity, known or unknown, which it may presently have, or which may later accrue or be acquired by it, arising from the Complaint or 60-Day Notice Letter, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions,

10

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

mitigation, fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed in the Complaint or 60-Day Notice Letter, for the alleged failure of Defendant to comply with the Clean Water Act and/or the Permit at the Facility, up to and including the Termination Date of this AGREEMENT.

**21.** The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**22.** The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code § 1542 with respect to any other claims against each other arising from the allegations and claims related to the Clean Water Act as set forth or that could have been set forth in the 60-Day Notice Letter or Complaint related to the Facility up to and including the Termination Date of this AGREEMENT.

**23.** Except as provided in Paragraphs 25 through 27 of this AGREEMENT, CSPA and its officers, executive staff, attorneys, or members of its governing board, shall not pursue or file any action against Defendant seeking relief for any alleged violation of the Clean Water Act, the Permit, or any revisions thereto, at the Facility for the period of time beginning on the Effective Date and ending on the Termination Date.

## TERMINATION DATE OF AGREEMENT

**24.** Subject to the conclusion of any proceeding to enforce this AGREEMENT pursuant to Paragraphs 25 through 27, or until the completion of any payment or affirmative duty required by this AGREEMENT, unless an extension is agreed to in writing by the SETTLING PARTIES, this AGREEMENT shall terminate on July 31, 2024 provided either SETTLING PARTY has not invoked the Dispute Resolution Procedures  obligations are complete and neither SETTLING PARTY has invoked the dispute resolution procedures described in Paragraphs 25-27.

11

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

## DISPUTE RESOLUTION PROCEDURES

**25.** Except as specifically provided herein, any disputes with respect to any provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer in good faith to resolve any dispute arising under this AGREEMENT within fifteen (15) calendar days of receiving email notification of a request for such a telephonic meeting. During the meet and confer proceeding, the SETTLING PARTIES will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute.

**26.** In the event that such disputes cannot be resolved within fifteen (15) calendar days of the SETTLING PARTIES meeting and conferring, any SETTLING PARTY may submit the dispute via motion to the District Court.

**27.** The SETTLING PARTIES shall be entitled to seek fees and costs pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions in connection with the resolution of any disputes before the District Court arising from this AGREEMENT.

## GENERAL PROVISIONS

**28.** **Force Majeure**. Defendant will notify CSPA if timely implementation of Defendant's respective duties under this AGREEMENT becomes impossible due to circumstances beyond the control of Defendant or its agents, and which could not have been reasonably foreseen and prevented by Defendant's exercise of due diligence. A Force Majeure event includes without limitation, any act of God, war, fire, earthquake, flood, hurricane, windstorm, or natural catastrophe; explosions, vehicle collisions or crashes, criminal acts, civil disturbance, vandalism, accident, sabotage, or terrorism; epidemic or pandemic; governmental order or decree; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental entity. Any delays due to Defendant's respective failure to diligently make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this AGREEMENT will not, in any event, be considered to be circumstances beyond Defendant's control. Financial inability will not, in any event, be considered to be circumstances beyond Defendant's control.

12

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.*–
Case No. 5:22-cv-05495-NS

a. If Defendant claims impossibility under this Section, it will notify CSPA in writing within thirty (30) calendar days of the date that Defendant discovers the event or circumstance that caused or would cause non-performance with the terms of this AGREEMENT, or the date Defendant should have known of the event or circumstance by the exercise of due diligence. The notice must describe the reason for the non-performance and specifically refer to this section of this AGREEMENT. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by Defendant to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendant will adopt all reasonable measures to avoid and minimize such non-performance.

b. The SETTLING PARTIES will meet and confer in good faith concerning the non-performance and, if the SETTLING PARTIES concur that performance was or is impossible, despite the timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant, new performance deadlines will be established by agreement of the SETTLING PARTIES.

c. If CSPA disagrees with Defendant's notice, or in the event that the SETTLING PARTIES cannot timely agree on the terms of new performance deadlines or requirements, either SETTLING PARTY may invoke the dispute resolution process described in Paragraphs 25-27 of this AGREEMENT. In such proceeding, Defendant will bear the burden of proving that any delay in performance of any requirement of this AGREEMENT was caused or will be caused by a Force Majeure event and the extent of any delay attributable to such circumstances.

29. **Construction**. The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the Permit and the Clean Water Act, or specifically herein. The captions and paragraph headings used in this AGREEMENT are for reference only and shall not affect the construction of this AGREEMENT.

30. **Choice of Law**. This AGREEMENT shall be governed by the laws of the United States and, where applicable, the laws of the State of California.

31. **Severability**. In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, void, invalid, or illegal as applied to any person, entity, or circumstance, that determination shall not adversely affect (a) any application to any other person, entity, or circumstance, (b) any other provision, term, paragraph, section, or sentence of this AGREEMENT, or (c) the AGREEMENT as a whole; provided that if such provision, term, paragraph, section, or sentence which is determined to be unenforceable, void, invalid, or illegal is material, a SETTLING PARTY which received the benefit or protection from such provision, term, paragraph, or sentence shall be entitled to seek other remedies, including without limitation, modification, or termination of this AGREEMENT.

32. **Correspondence**. All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, overnight mail, or e-mail as follows:

| If to CSPA: | Chris Shutes<br>Executive Director<br>California Sportfishing<br>Protection Alliance<br>1608 Francisco St.,<br>Berkeley, CA 94703<br>blancapaloma@msn.com | Copy to: | Anthony M. Barnes<br>Aqua Terra Aeris Law Group<br>4030 Martin Luther King Jr. Way<br>Oakland, CA 94609<br>amb@atalawgroup.com |
|---|---|---|---|
| If to Defendant: | Philip Menges,<br>President, CEO<br>Cirexx International, Inc.<br>791 Nuttman St,<br>Santa Clara, CA 95054<br>(408) 988-3980 | Copy to: | James R. Arnold<br>The Arnold Law Practice<br>One Sansome Street, Suite 3500<br>San Francisco, CA 94104<br>jarnold@arnoldlp.com |

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

33. **Counterparts**. This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied and

14

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.–*
Case No. 5:22-cv-05495-NS

scanned (.pdf) copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

34. **Assignment**. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their respective successors and assigns.  The SETTLING PARTIES also agree that there are no third-party beneficiaries to this AGREEMENT.

35. **Modification of the Agreement**. Except as otherwise provided in this AGREEMENT, this AGREEMENT, and any provisions herein, may not be changed, waived, discharged, or terminated unless by (a) a court order; (b) a written instrument, signed by the SETTLING PARTIES and approved by the Court; (c) operation of law; or (d) otherwise pursuant to the terms of this AGREEMENT.

36. **Full Settlement**. This AGREEMENT constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

37. **Integration Clause**.  This is an integrated agreement.  This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

38. **Negotiated Agreement**. The SETTLING PARTIES negotiated this AGREEMENT and it will not be construed against the party preparing it, but will be construed as if the SETTLING PARTIES jointly prepared this AGREEMENT and any uncertainty or ambiguity will not be construed against either SETTLING PARTY.

39. **Court Approval**. If, for any reason, the Court declines to approve the Stipulation to Dismiss with Prejudice and [Proposed] Order, the SETTLING PARTIES will use reasonable efforts to work together to modify the Stipulation and/or the AGREEMENT within thirty (30) calendar days of receiving the Court's notice of declination, so that the Stipulation and/or AGREEMENT become acceptable to the Court. If the SETTLING PARTIES are unable to modify the Stipulation and/or AGREEMENT in a mutually acceptable manner that is also acceptable to the Court, this AGREEMENT will become immediately null and void, as well as

inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Rule of Evidence 1152.

**40.    Computing Time**. In computing any period of time under this AGREEMENT, where the last day of such period falls on a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

**41.    Authority**. The undersigned representatives for Plaintiff and Defendant each certify that he/she/they is fully authorized by the SETTLING PARTY whom he/she/they represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

For Plaintiff:

CALIFORNIA SPORTFISHING                APPROVED AS TO FORM
PROTECTION ALLIANCE
                                        AQUA TERRA AERIS LAW GROUP

By: _____[signature]_____              By: _____[signature]_____
Name:   Chris Shutes                   Name:   Anthony M. Barnes, Esq.
Title:  Executive Director             Date:   February 6, 2023
Date:   February 6, 2023

For Defendant:

CIREXX INTERNATIONAL, INC.             APPROVED AS TO FORM

                                        THE ARNOLD LAW PRACTICE

By: _____                         By: _____
Name:   Philip Menges                  Name:   James R. Arnold, Esq.
                                               Tara L. Budiselic, Esq.
Title:  President, CEO                 Date:
Date:

16

SETTLEMENT AGREEMENT:
*California Sportfishing Protection Alliance v. Cirexx International, Inc.*–
Case No. 5:22-cv-05495-NS

inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Rule of Evidence 1152.

40. **Computing Time.** In computing any period of time under this AGREEMENT, where the last day of such period falls on a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

41. **Authority.** The undersigned representatives for Plaintiff and Defendant each certify that he/she/they is fully authorized by the SETTLING PARTY whom he/she/they represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

For Plaintiff:

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

By:
Name: Chris Shutes
Title: Acting Executive Director
Date:

By:
Name: Anthony M. Barnes, Esq.
Date:

For Defendant:

CIREXX INTERNATIONAL, INC.

APPROVED AS TO FORM

THE ARNOLD LAW PRACTICE

By: [signature]
Name: Philip Menges
Title: President, CEO
Date: 2/7/2023

By: [signature]
Name: James R. Arnold, Esq.
       Tara L. Budiselic, Esq.
Date: Feb. 7, 2023